UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DEBRA PROVENZANO,



Plaintiff,

-against-

PEARLMAN, APAT & FUTTERMAN, LLP,
PEARLMAN, APAT & FUTTERMAN, P.C.,
PEARLMAN, APAT & FUTTERMAN,
IRA H. FUTTERMAN, BURTON J. APAT, and
RICHARD H. APAT,

Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x



04 CIV. 5394

COMPLAINT AND
DEMAND FOR
A JURY TRIAL

        Plaintiff Debra Provenzano, by her attorneys, Siller Wilk LLP, as and for her Complaint

and Demand for Jury Trial against defendants Pearlman, Apat & Futterman, LLP, Pearlman,

Apat & Futterman, P.C., Pearlman, Apat & Futterman, Ira H. Futterman, Burton J. Apat, and

Richard H. Apat, alleges, upon personal knowledge and upon information and belief, as follows:

## Jurisdiction and Venue

        1.        This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) in

that plaintiff is a citizens of Arizona and defendants are citizens of New York and the amount in

controversy exceeds $75,000.

        2.        Venue in this judicial district is appropriate pursuant to 28 U.S.C. §§ 1391(a)(1)

and 1391(a)(2).

## Demand for Jury Trial

        3.        Plaintiff demands trial by jury of all issues triable by jury in this action pursuant

to Rule 38 of the Federal Rules of Civil Procedure.

## Parties

4.     Plaintiff Debra Provenzano is a resident and citizen of the State of Arizona.

5.     Defendant Pearlman, Apat & Futterman, LLP is a limited liability partnership organized and existing under the laws of the State of New York and engaged in the practice of law with an office located at 80-02 Kew Gardens Road, Suite 5001, Kew Gardens, New York 11415.

6.     Defendant Pearlman, Apat & Futterman, P.C. is a professional corporation organized and existing under the laws of the State of New York and engaged in the practice of law with an office located at 80-02 Kew Gardens Road, Suite 5001, Kew Gardens, New York 11415.

7.     Defendant Pearlman, Apat & Futterman is a partnership organized and existing under the laws of the State of New York and engaged in the practice of law with an office located at 80-02 Kew Gardens Road, Suite 5001, Kew Gardens, New York 11415.

8.     Defendants Pearlman, Apat & Futterman, LLP, Pearlman, Apat & Futterman, P.C., and Pearlman, Apat & Futterman are united in interest and, for purposes of this complaint, shall be referred to collectively as the "Futterman firm".

9.     Upon information and belief defendant Ira H. Futterman ("Futterman") is, and at all times relevant to this action was, a citizen of the State of New York.

10.     At all times relevant to this action, defendant Futterman was an attorney admitted to practice in the State of New York.

11.     At all times relevant to this action, defendant Futterman was a partner in the Futterman firm.

2

12.     At all times relevant to this action, defendant Futterman was a shareholder in the Futterman firm.

13.     At all times relevant to this action, defendant Futterman was an attorney employed by the Futterman firm.

14.     Upon information and belief defendant Burton J. Apat is, and at all times relevant to this action was, a citizen of the State of New York.

15.     At all times relevant to this action, defendant Burton J. Apat was an attorney admitted to practice in the State of New York.

16.     At all times relevant to this action, defendant Burton J. Apat was a partner in the Futterman firm.

17.     At all times relevant to this action, defendant Burton J. Apat was a shareholder in the Futterman firm.

18.     At all times relevant to this action, Futterman was an attorney employed by the Futterman firm.

19.     Upon information and belief defendant Richard H. Apat is, and at all times relevant to this action was, a citizen of the State of New York.

20.     At all times relevant to this action, defendant Richard H. Apat was an attorney admitted to practice in the State of New York.

21.     At all times relevant to this action, defendant Richard H. Apat was a partner in the Futterman firm.

22.     At all times relevant to this action, defendant Richard II. Apat was a shareholder in the Futterman firm.

3

23.     At all times relevant to this action, Futterman was an attorney employed by the Futterman firm.

## The Accident

24.     A all times relevant to this lawsuit, Total Spectrum Manufacturing, Inc. ("TSM"), was a domestic corporation duly organized and existing by virtue of the laws of the State of New York.

25.     At all times relevant to this lawsuit TSM was a domestic corporation with its principal place of business in the state of New York.

26.     At all times relevant to this lawsuit, defendant Vinten T.S.M. ("Vinten") was a domestic corporation duly organized and existing by virtue of the laws of the State of New York.

27.     At all times relevant to this lawsuit the defendant Vinten was a domestic corporation with its principal place of business in the State of New York.

28.     At all times relevant to this lawsuit, defendant Capital Cities/ABC, Inc. ("Capital Cities") was a domestic corporation duly organized and existing by virtue of the laws of the State of New York.

29.     At all times relevant to this lawsuit, defendant Capital Cities was a domestic corporation with its principal place of business in the state of New York.

30.     At all times relevant to this lawsuit, TSM designed, tested, manufactured, and promoted a robotic camera system known as "Autocam".

31.     At all times relevant to this lawsuit, Vinten, designed, tested, manufactured, and promoted a robotic camera system known as Autocam.

32.   Prior to October 29, 1993, Capital Cities, their agents, servants or employees contracted with TSM to install an Autocam, robotic camera system to be utilized at Capital Cities.

33.   Prior to October 29, 1993, Capital Cities, their agents, servants or employees contracted with Vinten, to install an Autocam, robotic camera system to be utilized at Capital Cities.

34.   Prior to October 29, 1993, TSM sold said robotic camera system to Capital Cities.

35.   Prior to October 29, 1993, TSM leased said robotic camera system to Capital Cities.

36.   Prior to October 29, 1993, Vinten, sold said robotic camera system to Capital Cities.

37.   Prior to October 29, 1993, Vinten, leased said robotic camera system to Capital Cities.

38.   Upon information and belief, prior to October 29, 1993, TSM contracted with Capital Cities, to train and teach those persons designated by Capital Cities, in how to properly use said Autocam robotic camera system.

39.   Upon information and belief, prior to October 29, 1993, Vinten, contracted with Capital Cities, to train and teach those persons designated by Capital Cities, in how to properly use said Autocam robotic camera system

40.   Upon information and belief, TSM did in fact teach and train those persons designated by Capital Cities, in how to properly use said Autocam Robotic Camera System.

41.     Upon information and belief, the defendants, Vinten, did in fact teach and train those persons designated by Capital Cities, in how to properly use said Autocam Robotic Camera System.

42.     On or about October 29, 1993, plaintiff Debra Provenzano, during the course of her employment was struck and injured by the Autocam when it abruptly, without warning swung around causing the teleprompter to strike Ms. Provenzano in the head causing her to be driven into the adjacent wall and to sustain personal injuries.

43.     TSM, Vinten, and Capital Cities acted negligently and or inadequately trained, educated, instructed, demonstrated, advised, and supervised, the employees of Capital Cities/ABC, Inc., so as to cause said Autocam to be operated unsafely and improperly causing the Plaintiff, serious personal injuries hereinafter alleged.

44.     The Autocam was so negligently, carelessly, and recklessly designed, tested, manufactured, inspected, serviced, installed, and maintained: and was operated in an unreasonably dangerous and potentially injury producing manner as to make it unreasonably dangerous, defective and unsafe for its intended use to all persons in the vicinity of the Autocam in general and specifically the plaintiff.

45.     The Autocam was defective in that it was unreasonably dangerous for its intended use purpose and failed to be in compliance with the warranties of merchantability and therefore the defendants individually and jointly did breach the express and implied warranties of merchantability and fitness for a particular purpose in violation of Sections 2-314 and 2-315 of the Uniform Commercial Code.

46.     The product was unreasonably dangerous and defective as a result of its tendency to move in unpredictable directions with unpredictable speeds without any warning,

6

notice or signal by the camera that it was or is about to swing around or move about with rapid

motion; the machine is extremely heavy and made of metal with sharp right angles and edges

which are not protected with padding, foam or other protective covering; the environment of use

of this robotic camera was in a T.V. studio where individuals were expected to be working and

that it was therefore foreseeable for this machine to come into contact with people and therefore

should have been designed in light of this foreseeable risk and foreseeable use in this real world

application and the failure to take this into account was negligent on the part of the designers and

manufacturers of said robotic camera system; upon information and belief, the manufacturers

and designers of this robotic camera failed to test this equipment adequately and had they

properly tested and inspected the machine under its expected environment of use these

conditions and dangers would have recognized, realized and discovered; and the foreseeable

dangers and risks of injury to persons working around the robotic camera would have been

discovered; the robotic camera fails to give off some type of warning or signal, either audible, or

some type of light signal to let people know that the robot was about to swing around or move

which would be visible to persons walking, working or otherwise near or in the same proximity

of this robotic camera while in use; the defendants failed to adequately train, instruct and educate

the third party defendant and the servants, agents and employees of the third-party defendant in

the safe utilization of the robotic camera system in its expected environment of use for which the

third-party defendant was utilizing said product. The defendants failed to properly install the

robotic camera system with all necessary safe guards including cameras to view the location of

the robotic camera and other persons working around the camera along with other safe guards of

which the defendant's have exclusive knowledge of. The defendants knew or should have known

that such hazardous and dangerous conditions existed and failed to correct or remedy such

conditions all of which they had actual and constructive notice of; the Robotic Autocam Camera was negligently, carelessly, and recklessly designed, tested, manufactured, inspected, serviced, installed and maintained; all these conditions defendants, their agents, servants and/or employees had due notice of or by reasonable care and inspection could have corrected same.

47.     That the robotic camera system was not equipped with a protective ring to demonstrate the reach of the teleprompter and the zone of danger in which the teleprompter could potentially swing around and strike an individual in its proximity; additionally the robotic camera should have been equipped with a center mechanism to prevent it from crashing into objects, people, walls or other fixtures which could cause injury or damage.

48.     As a result of the foregoing, the plaintiff was caused to sustain severe and serious personal injuries and was required to seek and obtain medical care and attention in an effort to cure and/or alleviate ease and upon information and belief will be compelled to do so in the future.

49.     As a result of this occurrence, plaintiff sustained the following serious personal injuries, including, but not limited to: whip of the neck causing neck pain and lower back pain; pain in hand and lower leg; weakness in legs; painful and limited range of motion of the cervical spine; discomfort in the right neck; post-operative changes at C6-7 and T1 where she had been operated on; spine shows degenerative disc changes; increased paraspinal lumbar insertional activity consistent with injury to the nerves to her lower back as well as increase insertional activity in the right tibialis anterior consistent with L4 or L5 radicular compression; a small left sided disc herniation or asymmetric disc bulge at the L4-L5 level which is compressing the left anterior aspect of the thecal sac with slight narrowing of the left exit foreamen; there is also mild disc bulging at the L2-L3 level with flattening of the anterior aspect of the thecal sac. Anterior

8

disc bulging is also noted at this level; a focal right sided disc herniation is seen at the C6-7 interspace; disc material is seen pressing along the right anterolateral aspect of the subarachnoid space and there is impingement of the proximal right C 6-7 neural foramen; impression Focal right sided disc herniation at C6-7 with impingement on the proximal neural foramen. Plaintiff underwent cervical spine surgery after the acute onset of lhermitte's and bilateral arm pain radiating to both elbows.

50.    That the aforesaid occurrence and the injuries sustained by the plaintiff were caused wholly and solely by reason of the carelessness, negligence, and recklessness of TSM, Vinten, and Capital Cities.

## Retainer of the Defendant Attorneys

51.    Plaintiff retained the defendant attorneys to represent her in connection with any claims she might have against TSM, Vinten, and/or Capital Cities arising from the 1993 accident prior to the expiration of the applicable Statute of Limitations.

52.    The defendant attorneys agreed to represent plaintiff in these matters.

53.    Plaintiff had an attorney-client relationship with each of the defendants named herein.

54.    Each of the defendants owed plaintiff a non-delegable duty and the limitations of CPLR Article 16 are inapplicable.

## The TSM Lawsuit

55.    In 1996, the Futterman firm commenced a lawsuit against TSM, Vinten and Capital Cities in Supreme Court, Kings County under Index No. 9742/96 (the "TSM Lawsuit").

56.    Defendant Futterman and the Futterman firm appeared as attorneys of record for plaintiff in the TSM Lawsuit.

57.     The complaint filed by the defendant attorneys in the TSM Lawsuit was meritorious and plaintiff would have prevailed on her claims therein had the defendant attorney prosecuted the case properly.

58.     The TSM Lawsuit went to trial between December 3, 2001 and December 14, 2001.

59.     The defendant attorneys failed to prosecute the trial properly. Among other things, the defendant attorneys did not introduce any evidence that the Autocam was a dangerous and defective product and the defendant attorneys failed to call an expert witness on this subject.

60.     On or about December 14, 2001, the jury returned a verdict against plaintiff in favor of TSM, Vinten, and Capital Cities.

61.     As a result of the foregoing, plaintiff's claims in the TSM Lawsuit were dismissed and plaintiff is forever barred from recovering the support payments to which she was entitled.

## Legal Malpractice

62.     The defendant attorneys acted as plaintiff's attorney from the time they were retained and on a continuous basis thereafter through and including December 14, 2001.

63.     As attorneys for plaintiff, the defendants owed plaintiff a duty to render legal services in a competent and professional manner and to act with ordinary and reasonable skill, care, and diligence.

64.     The defendant attorneys acted negligently under the circumstances, failed to provide adequate legal services to plaintiff in accordance with generally accepted standards of the legal profession as exists in the State of New York, and failed to act with ordinary and reasonable care, skill, and diligence.

65. The negligence of defendants consisted of, among other things, failing to perform an investigation regarding the circumstances giving rise to plaintiff's claims; failing to review the evidence; failing to interview witnesses; failing to inspect the Autocam; failing to have the Autocam inspected by an expert; failing to obtain adequate documentation of the Autocam; failing to failing to have the original documents examined by experts; failing to conduct adequate discovery in the TSM Lawsuit; failing to assert the correct claims in the TSM Lawsuit; failing to assert the proper theories of liability in the TSM Lawsuit; failing to make pre-trial motions; failing to develop evidence in support of plaintiff's claims; failing to submit evidence; failing to prepare for trial; failing to introduce evidence at trial; failing to call witnesses at trial; failing to call expert witnesses at trial failing to conduct adequate cross-examination of opposing witnesses; failing to make adequate legal arguments at trial; failing to research and submit proper jury instructions; failing to make necessary objections; failing to research and/or know the applicable law; failing to make proper motions; failing to file an appeal; and failing to advise plaintiff properly.

66. Plaintiff would have prevailed on her claims against TSM, Vinten, and/or Capital Cities and would have recovered substantial money damages but for the defendant attorneys' malpractice as described above.

67. By reason of the foregoing, plaintiff has been damaged because of the negligence of defendants in an amount to be determined at trial, but in no event less than $5,000,000.00.

WHEREFORE, plaintiff Debra Provenzano demands judgment against defendants Pearlman, Apat & Futterman, LLP, Pearlman, Apat & Futterman, P.C., Pearlman, Apat & Futterman, Ira H. Futterman, Burton J. Apat and Richard H. Apat, jointly and severally, in an amount to be determined, but in any event not less than $5,000,000 in compensatory damages, return of all legal fees paid to defendants, punitive damages, plus prejudgment interest, at the legal rate, from December 14, 2001 until the date of judgment herein, together with attorneys' fees, costs and disbursements of this action, and such other and further relief as the Court deems just and proper.

Dated: New York, New York
December 13, 2004

SILLER WILK LLP
*Attorneys for Plaintiff*

By:

Matthew F. Schwartz (MS 9843)
675 Third Avenue
New York, New York 10017
Telephone: (212) 421-2233

12