UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
DEBRA PROVENZANO,

                      Plaintiff,

      — against —

PEARLMAN, APAT & FUTTERMAN, LLP,
PEARLMAN, APAT & FUTTERMAN, P.C.,
PEARLMAN, APAT & FUTTERMAN,
IRA H. FUTTERMAN, BURTON J. APAT, and
RICHARD H. APAT,

                      Defendants.
-------------------------------------------------------------X

**MEMORANDUM and ORDER**

04-CV-5394 (SLT)(RLM)

**TOWNES, United States District Judge:**

Debra Provenzano brought this diversity action against the law firm of Pearlman, Apat & Futterman, LLP ("the law firm"), alleging that the law firm committed legal malpractice when it represented her in a previous trial against Vinten T.S.M., Inc. ("Vinten"). In the trial against Vinten, Provenzano sought to recover for injuries sustained when, according to Provenzano, a robotic camera manufactured by Vinten struck her in the head on a television set of Capital Cities/ABC, Inc. ("ABC"). Provenzano alleges that the representation by the law firm was negligent and that, but for the negligence of the law firm, the jury would have found that the robotic camera was defectively designed. The law firm moves for summary judgment.

## BACKGROUND

Debra Provenzano was a hair stylist employed by Capital Cities/ABC, Inc. (Def. 56.1 Statement ¶ 2). According to Provenzano, on October 29, 1993, she was struck in the head by a robotic camera on a set at an ABC studio while she was walking toward the anchor desk. (Def. 56.1 Statement ¶ 2; Provenzano Decl. ¶¶ 6–7). Provenzano alleges that she sustained injuries to

her head, neck, and back as a result of the accident. (Jeret Report; Honor Report).

The camera that hit Provenzano was part of a system designed and manufactured by Vinten. (Def. 56.1 Statement ¶ 2; Pl. 56.1 Resp. 12, ¶ 6). The camera head was able to pan and tilt, and it was mounted on a robotic pedestal that could drive around the floor of the studio and raise and lower the camera head. (Allen Report 4). The individual cameras could be operated remotely by a cameraman at an operator console or controlled by a cameraman at the pedestal. (Provenzano Decl. ¶ 5; Allen Report 4).

Provenzano retained the law firm on August 4, 1994, more than nine months after the incident. (Def. 56.1 Statement ¶ 8). In 1996, Provenzano, represented by the law firm, filed an action against Vinten and ABC in the Supreme Court of Kings County, New York, alleging that ABC acted negligently, that the camera system was defectively designed by Vinten, and that Vinten breached the warranties of merchantability and fitness for a particular purpose. (Compl. 2–5). The trial was held from December 3, 2001, to December 14, 2001. (Pl. 56.1 Resp. 14, ¶ 15). By the time of the trial, ABC had been discharged, and only the design defect claim remained.

At trial, the law firm argued that the jury should infer the existence of a design defect from the injury to Provenzano, prior instances of unprompted camera movement, and prior malfunctions documented in maintenance reports. (Tr. 793–803). The law firm called as witnesses Dobrimir Borovecki, a retired Vinten engineer who took service calls for the camera system at ABC (Tr. 127–28), and James Weisz, a maintenance engineering supervisor for ABC (Tr. 268–69). Borovecki testified that he was an expert in the use of the camera systems, though not in their design (Tr. 125, 127). He testified that the camera would move when the system was

restarted after an interruption in power. (Tr. 213–14). He also testified that ABC maintenance reports indicated two problems — damaged power cables and tripped circuit breakers — that could cause unprompted movement by the camera (Tr. 193–95, 198, 201–04), as well as problems with the settings of the clips that restrict the range of motion of the cameras (Tr. 205). James Weisz also identified ABC maintenance reports that indicated tripped circuit breakers (Tr. 274), cable damage (Tr. 281–82), and incorrect clip settings (Tr. 280–81). He confirmed that some of the reports noted instances of unprompted movement by the cameras (Tr. 275, 277, 280) and testified that he had seen a camera move erratically when powered up (Tr. 282).

Vinten argued in response that the camera did not move at the time of incident (Tr. 770) and, in the alternative, that there was insufficient evidence of a design defect (Tr. 771, 776). In support of its argument that the camera did not move, Vinten emphasized that none of the witnesses who testified at trial actually saw it move. (Tr. 770). Provenzano was not looking in the direction of the camera when it allegedly hit her (Provenzano Decl. ¶ 5), and Wallace Hewitt, the ABC cameraman assigned to the camera, did not actually see the camera move or hit Provenzano (Tr. 231). In support of its argument that there was insufficient evidence of a design defect, Vinten argued that Provenzano had failed to establish the specific cause of the movement of the camera (Tr. 771) and that the malfunction could have been caused by improper maintenance or repair by ABC employees (Tr. 776).

The jury returned a verdict against Provenzano and determined that the camera system was not defective. (Tr. 858–59). On December 13, 2004, Provenzano brought the present action against the law firm alleging legal malpractice in the litigation against Vinten. The law firm moves for summary judgment.

3

*Report of Dr. Peter Allen*

In support of her argument that the law firm was negligent for failing to obtain a design expert, Provenzano has submitted a report by Dr. Peter Allen, an expert in the design of robotic systems, who concluded that the movement of the camera was probably caused by a defective design. (Allen Decl. ¶ 4). Dr. Allen analyzed the ABC maintenance work orders from July 17, 1991, until October 27, 1993, (Allen Report 8) and identified several possible causes of unprompted movement by the camera: 1) burned out motors (Allen Report 9–10); 2) failed circuit boards (Allen Report 10); 3) a malfunctioning control system (Allen Report 10); 4) shorted power cables (Allen Report 8, 11); 5) poorly shielded data cables (Allen Report 11); 6) broken switches (Allen Report 11); 7) overheating (Allen Report 11); 8) incorrect placement of the clips that prevent camera movement (Allen Report 8); 9) low gas pressure (Allen Report 8); and 10) a faulty drive belt (Allen Report 8). Dr. Allen also suggested that the system could have been miscalibrated, for example if the dolly on which the camera rested had been moved manually. (Allen Report 8).

Dr. Allen stated that he was unable to determine whether the movement was caused by software error. (Allen Report 22). No testing was done at the time of the accident because Provenzano did not retain the law firm until nine months after the incident. (Allen Report 22). Dr. Allen explained in his declaration that the software is a part of the design of the integrated camera system. (Allen Decl. ¶¶ 8–9).

Dr. Allen concluded that the camera system violated the safety standards of the American National Standards Institute. (Allen Report 5). First, the cameras moved after an interruption of power without being prompted by an operator. (Allen Report 6). Second, the system lacked

audible or visual signals to warn personnel that the system was powered on. (Allen Report 6). Third, the mechanical and software clips that limited the movement of the camera were not checked regularly and the pedestal was often moved, which required new limit stops to be programmed in. (Allen Report 6). Fourth, the set did not have markings to identify the restricted space. (Allen Report 6).

Dr. Allen also explained that improper repairs could have caused unprompted movement by the camera. One of the work orders indicated that the motors were rebuilt approximately one month before the incident using parts from motors known to be defective. (Allen Report 9–10). Additionally, he noted several other repairs performed shortly before the incident that could have caused the accident if performed incorrectly, including the repair or replacement of cables, safety switches, the power supply, and circuit boards. (Allen Report 10–12). The work orders also reflected multiple instances of board and part swapping, which could have caused older versions of software to run. (Allen Report 22).

Dr. Allen explained that, given the complexity of the system, Vinten was responsible for ensuring that new parts and programs would be compatible with the system (Allen Decl. ¶ 9) and played a role in repairs (Allen Decl. ¶ 18). He concluded that the presence of 133 work orders from July 1991 to October 1993 was evidence of a defective design. (Allen Decl. ¶ 10). Furthermore, Allen believed that the constant changing and swapping of parts compromised the integrity of the system. (Allen Decl. ¶ 17).

## STANDARD OF REVIEW

Summary judgment is appropriate only when "there is no genuine issue as to any material fact and . . . the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c);

5

*accord Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). The moving party bears the burden of showing that there is no genuine issue of fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S. Ct. 2505, 2514 (1986). "[T]he burden on the moving party may be discharged by 'showing' — that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325, 106 S. Ct. at 2554. If the movant meets this burden, the nonmovant must "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e); *accord W. World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir. 1990). The nonmovant cannot "'escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts,' or defeat the motion through 'mere speculation or conjecture.'" *W. World*, 922 F.2d at 121 (citations omitted). Moreover, the disputed facts must be material to the issue in that they "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510. "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994) (citing *Dister v. Cont'l Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir. 1988)).

## DISCUSSION

Provenzano alleges that the defendants committed legal malpractice when they: 1) failed to retain a design expert; 2) failed to call as witnesses the designers of the camera; 3) failed to develop evidence of erratic camera movement; and 4) failed to call two eyewitnesses. In its motion for summary judgment, the law firm argues that Provenzano has not provided evidence sufficient to establish the existence of a genuine issue of fact. This Court agrees. Even

assuming that the representation provided by the law firm was negligent, Provenzano has not provided evidence sufficient for a rational factfinder to find that, but for the alleged negligence, the result in the underlying litigation would have been different.

*a. Legal Standard*

"A claim for attorney malpractice . . . is a matter of state substantive law." *Banker v. Nighswander, Martin & Mitchell*, 37 F.3d 866, 871 (2d Cir. 1994) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817(1938)). This Court applies the choice of law principles of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S. Ct. 1020, 1021–22 (1941). New York employs an interest analysis, which "gives controlling effect to the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties has the greatest concern with the specific issue raised in the litigation." *Babcock v. Jackson*, 191 N.E.2d 279, 283 (N.Y. 1963). In the present action, New York law applies because the attorneys were licensed in New York and the underlying trial took place in New York. *See LNC Inv., Inc. v. First Fidelity Bank, Nat'l Ass'n*, 935 F. Supp. 1333, 1350–51 (S.D.N.Y. 1996).

To sustain an action for legal malpractice under New York law, the plaintiff must establish that the lawyer fell below the applicable standard of care and that a reasonable factfinder in the underlying suit would have arrived at a different result but for the attorney's negligence. *Rubens v. Mason*, 387 F.3d 183, 189 (2d Cir. 2004) (citing *Zarin v. Reid & Priest*, 585 N.Y.S.2d 379, 381 (App. Div. 1992)). A lawyer's conduct falls below the applicable standard of care when the attorney "fails to exercise 'the ordinary reasonable skill and knowledge' commonly possessed by a member of the legal profession." *Darby & Darby, P.C. v. VSI Int'l, Inc.*, 739 N.E.2d 744, 746 (N.Y. 2000) (quoting *Byrnes v. Palmer,* 45 N.Y.S. 479, 481

7

(App. Div. 1897)). "An attorney cannot be held liable for malpractice for reasonable discretion exercised during the course of a litigation." *Estate of Re v. Kornstein Veisz & Wexler*, 958 F. Supp. 907, 921 (S.D.N.Y. 1997) (citing *Rosner v. Paley*, 481 N.E.2d 553, 554 (N.Y. 1985)). The Court should avoid "second-guessing . . . counsel's strategic judgment." *Id.* at 923 (quoting *Pacesetter Comms. Corp. v. Solin & Breindel*, *P.C.*, 541 N.Y.S.2d 404, 406 (App. Div. 1989)) (internal quotation mark omitted).

To establish that the result in the underlying suit would have been different absent the negligence, the plaintiff must prove a "case within a case." *Weil, Gotshal & Manges, LLP v. Fashion Boutique of Short Hills, Inc.*, 780 N.Y.S.2d 593, 596 (App. Div. 2004). In New York, a plaintiff may recover under a design defect theory if the product is not reasonably safe. *Denny v. Ford Motor Co.*, 662 N.E.2d 730,735 (N.Y. 1995). The Court inquires whether, "if the design defect were known at the time of manufacture, a reasonable person would conclude that the utility of the product did not outweigh the risk inherent in marketing a product designed in that manner." *Voss v. Black & Decker Mfg. Co.*, 450 N.E.2d 204, 208 (N.Y. 1983). The design defect must be a substantial factor in causing the injury. *See id.*

*b. Failure To Retain a Design Expert*

Even assuming that the law firm was negligent in failing to retain a design expert, Provenzano has not provided evidence sufficient for a rational factfinder to conclude that, but for the alleged negligence, Provenzano would have prevailed in the underlying suit. Dr. Allen does not provide any basis whatsoever for a legitimate inference by the factfinder that the unprompted camera movement was caused by a design defect rather than negligent repairs by ABC, and Provenzano cannot defeat a summary judgment through mere conjecture or speculation. *See*

8

*McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (quoting *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991)); *Beechwood Restorative Care Ctr. v. Leeds*, 436 F.3d 147, 155 (2d Cir. 2006). Dr. Allen explained that an ABC work order indicated that, approximately one month before the incident, the motors on the camera system were rebuilt using parts from motors known to be defective. (Allen Report 9–10). Several other repairs performed shortly before the accident could also have caused it if performed incorrectly, including the following: the fabrication of new computer cables three days before the accident (Allen Report 11); the repair of safety switches six weeks before the accident (Allen Report 11); the replacement of the power supply one month before the accident (Allen Report 12); and the frequent replacement of circuit boards (Allen Report 10). The maintenance records also reflected multiple instances of board and part swapping, which, according to Dr. Allen, could have caused older versions of the software to run. (Allen Report 22). No rational factfinder could find, based on the evidence provided by Provenzano, that the result in the underlying litigation would have been different because any such conclusion would have no basis except speculation.

*c. Failure To Call as Witnesses the Designers of the Camera System*

Even assuming that the law firm was negligent in failing to call as witnesses the designers of the camera system , Provenzano has not provided evidence sufficient for a rational factfinder to conclude that, but for the alleged negligence, Provenzano would have prevailed in the underlying suit. Provenzano does not offer any specific testimony that the designers could have provided. (Coleman Report 10–11). Moreover, Provenzano does not suggest that the designers could have provided testimony to support the inference that a design defect, rather than negligent repairs by ABC, caused the movement of the camera.

*d. Failure To Develop Evidence of Erratic Camera Movement*

Even assuming that the law firm was negligent in failing to develop further evidence of erratic camera movement, Provenzano has not provided evidence sufficient for a rational factfinder to conclude that, but for the alleged negligence, Provenzano would have prevailed in the underlying suit. The law firm did in fact develop extensive evidence of erratic camera movement. It presented testimony from Hewitt, Borovecki, and Weisz regarding instances of erratic camera movement (Tr. 86–90, 193–95, 198, 201–02, 275, 277, 280, 282) and introduced into evidence ABC maintenance reports documenting instances of unprompted movement (Def. Ex. 16). More importantly, even if the law firm developed further evidence of erratic camera movement, a rational factfinder could not find that the result in the underlying litigation would have been different because Provenzano provides no basis other than speculation to support the conclusion that a design defect, rather than negligent repairs by ABC, caused the unprompted camera movement.

*e. Failure To Call as Witnesses Ian McGrady and Willis Chambers*

Provenzano alleges that the law firm negligently failed to call as witnesses Ian McGrady and Willis Chambers, ABC cameramen who were nearby when the accident occurred. Although neither McGrady nor Chambers saw the camera hit Provenzano, they both saw the camera move (Chambers Aff. 2, ¶ 10; McGrady Aff. 2, ¶ 10), which would have negated the argument of Vinten that the camera never actually moved (Tr. 770). Even if the failure to call McGrady and Chambers was negligent, no rational factfinder could find that, but for the absence of testimony from McGrady and Chambers, the result in the underlying suit would have been different. Even assuming proof that the camera moved, Provenzano provided no basis other than speculation for

10

an inference by the factfinder that a design defect, rather than negligent repairs by ABC, caused the accident.

## CONCLUSION

The defendants' motion for summary judgment dismissing this action is **granted**. The Clerk of Court is directed to close this case.

Dated: Brooklyn, New York
October 24, 2008

*Sandra L. Townes*
SANDRA L. TOWNES
United States District Judge